# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **Steven Snyder**<br>235 Biddle Street<br>Bowling Green, Ohio 43402<br><br>and<br><br>**Tim Snyder**<br>306 Westwood Drive<br>Bowling Green, Ohio 43402<br><br>and<br><br>**T&S Agriventures, LLC**<br>235 Biddle Street<br>Bowling Green, Ohio 43402<br><br>and<br><br>**Beth Rose Real Estate and Auctions, LLC**<br>6546 Weatherfield Court<br>Building E Suite 3<br>Maumee, Ohio 43537<br><br>      Plaintiffs,<br><br>v.<br><br>**The Village of Luckey, Ohio**<br>226 Main Street<br>P.O. Box 384<br>Luckey, Ohio 43443<br>*Serve*:  Corey Speweick, Esq.<br>   Village Solicitor<br>   226 Main Street<br>   P.O. Box 384<br>   Luckey, Ohio 43443<br><br>      Defendant. | Case No.:<br><br>Judge:<br><br>**<u>VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHE RELIEF WITH JURY DEMAND ENDORSED HEREON</u>**<br><br>Zachary J. Murry (0087421)<br>Marvin A. Robon (0000664)<br>BARKAN & ROBON LTD.<br>1701 Woodlands Drive<br>Suite 100<br>Maumee, Ohio 43537<br>Phone:  (419) 897-6500<br>Fax: (419) 897-6200<br>mar.br@bex.net<br>zmurry@barkan-robon.com<br><br>*Attorney for Plaintiffs* |

Now come the Plaintiffs, by and through undersigned counsel, and hereby file their Complaint for injunctive relief and damages against Defendant Village of Luckey, Ohio, and in support of their cause, hereby declare and aver as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this action seeking relief for a violation of their respective constitutional rights. Particularly, Plaintiff states that the governmental activity of the Defendant Village of Luckey, Ohio has constituted shocking and continuing violations of the Plaintiffs rights under the Fifth Amendment to the United States Constitution as well as their rights of procedural and substantive due process under the Fourteenth Amendment. Further, Defendant municipal entity's conduct is also violative of Article 1 Section 19 of the Ohio Constitution.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391, as the events giving rise to the Plaintiffs' claims occurred within this district and the real property which is the subject of this dispute is located within the territorial confines of the Northern District.

## THE PARTIES

4. Steven Snyder is a resident of Bowling Green, Wood County, Ohio. At all relevant times herein alleged, Steven was also a member of Plaintiff T&S Agriventures, LLC, along with his brother Timothy Snyder.

5. Timothy Snyder is a resident of Bowling Green, Wood County, Ohio. At all relevant times herein alleged, Timothy was also a member of Plaintiff T&S Agriventures, LLC, along with his brother Steven Snyder.

6. Plaintiff T&S Agriventures, LLC (hereinafter "TSA") is a limited liability company formed and organized under the laws of the State of Ohio. Plaintiffs Steven and Timothy Snyder are the sole members of TSA. TSA was specifically formed by Steven and Timothy for the purchase, operation and maintenance of certain real property in Luckey, Wood County, Ohio (hereinafter "the subject property").

7. Plaintiff Beth Rose Real Estate and Auctions, LLC (hereinafter "Beth Rose") is a limited liability company formed and organized under the laws of the State of Ohio with its principal place of business in Maumee, Lucas County, Ohio. At all relevant times, Plaintiff Beth Rose was in the business of marketing, selling, and auctioning real property in Northwest Ohio, including the subject property.

8. The Village of Luckey, Ohio is a municipal corporation incorporated under the laws of Ohio pursuant to OH. Rev. C. § 707.01, *et seq*. At all times relevant herein the Village was acting within the course of its purported authority and under color of law.

## FACTS

9. Plaintiffs Tim and Steven Snyder are lifelong residents of Northwest Ohio. During the course of Steven's former employment with the Ohio Environmental Protection Agency ("OEPA"), he identified the subject property while working nearby on a large remediation project.

10. The subject property is the site of a former quarry that was originally owned and operated by France Stone and Hanson Aggregates. Prior to the purchase of the subject property by TSA in 2005, the subject property had been inactive for many years and was blighted. In addition, the quarry pit itself had completely filled with water, creating a lake of ±30 acres with a depth of approximately 80 feet throughout.

3

11. Prior to the 2005 purchase of the subject property by TSA, the former owners had, upon information and belief, offered the entirety of the subject property, comprising approximately ±72.4 acres, to the Village for the price of $1.00, but the Village refused.

12. Upon further information and belief, in 1979, the Village and the prior owners entered into an agreement whereby the Village, as consideration for $10.00 paid, was authorized to conduct studies and other activity associated with the establishment of the subject property as a municipal water source. *See* 1979 <u>Agreement between Village of Luckey, Ohio and France Stone Company</u>, filed herewith and incorporated herein by reference as Exhibit 1.

13. No action was ever taken by the Village in performance of the Agreement and the property sat vacant and blighted until its purchase by TSA.

14. Recognizing the unique character of the property, Plaintiff Steven and Timothy formed TSA for the specific purpose of acquiring and holding title to the subject property. The sale was completed on or about March 22, 2005, and consisted of the sale of 16 parcels of real property (the subject property and two unrelated parcels). Plaintiff TSA paid a total of $330,000.00 for all of the purchased property. Copies of the recorded <u>Deeds</u> are filed herewith and incorporated herein by reference as Exhibit 2.

15. After acquiring title to the subject property, Plaintiffs Steven and Timothy immediately began work to improve the property. Over the next 15 years, the property was substantially improved and enhanced exclusively via the efforts of Steven and Timothy. The improvements include, but are not limited to:

    a. Adding hundreds-of-thousands of yards of clean fill to improve topography and grading as well as to cover any remaining quarry spoils;

    b. Obtaining and maintaining valuable curb cuts along OH State Route 582, Gilbert Road, and Krotzer Avenue;

    c. Establishing electric and sanitary sewer service;

    d. Clearing brush, trimming and removing trees;

    e. Stocking and maintaining the lake; and

    f. Creating innumerable aesthetic improvements.

16. The improvements were undertaken with the specific intention of improving the marketability of the subject property so that it could be sold for high-end residential, or other, development.

17. In or about 2018, TSA began to prepare the subject property in earnest for its eventual listing and sale. However, prior to taking steps to market the subject property, TSA approached the Village to determine whether the it was interested in purchasing the subject property.

18. The Village declined to purchase the subject property from TSA and did not even provide an offer for purchase.

19. Thereafter, in or about July 2021, TSA and Plaintiffs Timothy and Steven entered into an agreement with Plaintiff Beth Rose to sell the property via auction. Pursuant to the terms of the parties agreement, Ms. Rose was to receive a commission on the sale price of the subject property.

20. The parties agreed that the auction would be held on September 18, 2021, at the subject property. This was a conscious decision by the Plaintiff property owners and Plaintiff Beth Rose in order to highlight the natural beauty of the subject property and its character as prime real estate, ready for development.

21. In anticipation of the auction sale, Plaintiff Beth Rose undertook significant time, effort, and expense in scheduling the auction and in marketing and promoting the subject property and the auction.

22. In light of the unique nature of the property, a pre-auction reserve was established. It was also determined that the property would be auctioned in six (6) tracts. The entirety of the subject property was also to be offered as a whole, with the highest overall price as the winning bid. An aerial of the subject property, identifying the respective tracts is below:



See <u>Auction Flyer</u>, filed herewith and incorporated herein by reference as Exhibit 3.

6

23. As part of the preparation for the auction, Plaintiff Beth Rose placed numerous signs on and around the subject property to advertise the auction and alert the public of the upcoming sale.

24. This advertising and signage campaign for the September 18, 2021, auction intensified in or about August 4, 2021.

25. Upon information and belief, the Defendant Village became aware of the anticipated auction on or before August 4, 2021.

26. Upon becoming aware of the auction, the Village, by and through its duly appointed and/or elected officers and agents, contacted Plaintiffs and attempted to dissuade them from auctioning the property.

27. Specifically, the Village requested that Plaintiffs not auction the property, ostensibly because it would increase the fair market value of the property and make it more expensive for appropriation by the Village at a later date.

28. On August 18, 2021, the Village sent a self-styled 'Notice of Inspection' to Plaintiff TSA indicating that the Village had voted to pursue the appropriation of the subject property and demanding access for the purposes of performing an inspection. A copy of this August 18, 2021, Letter is filed herewith and incorporated herein by reference as Exhibit 4.

29. The letter did not include a copy of the minutes from the council meeting referenced therein, nor did it contain a copy of any written resolution authorizing the use of the Village's eminent domain power pursuant to OH. Rev. C. 163.01, *et seq*.

30. Accordingly, on August 20, 2021, Steven, acting on behalf of TSA, responded to the Village and indicated that the Village's actions were interfering with Plaintiffs' ability to market and sell the property and that TSA would not provide the Village with an inspection of

the subject property. A copy of this <u>August 20, 2021, Letter</u> is filed herewith and incorporated herein by reference, as Exhibit 5. However, Plaintiffs ultimately did agree to provide an inspection to the Village.

31. Prior to the September 18, 2021, Auction date the Village took affirmative and concerted actions to limit the marketability of the property and to sabotage the auction.

32. The Village sent communication to Plaintiff Beth Rose, indicating its intention to appropriate the property, and demanding that she make all potential bidders aware of this fact prior to the auction. This demand was made in spite of the fact that no Resolution to appropriate the property had been passed.

33. On the day of the auction, the Village placed 'No Parking' and other unnecessary temporary signage around the perimeter of the subject property. This signage was clearly visible on Locust Street around the primary access point to the property. These signs were temporarily erected, upon information and belief, with the specific intention of dissuading interested parties from bidding at the Auction.

34. Village representatives were also present on site at the auction. Their presence was noted by Plaintiff Beth Rose who also indicated that she had been contacted by the Village and made aware of the intent to appropriate.

35. The Village did not bid at the auction. Instead, its representatives made themselves clearly visible with the intended effect of chilling bidding activity on the subject property.

36. The actions of the Village had the intended effect of sabotaging the auction.

37. Prior to the auction, Plaintiffs, based upon market and other research, expected the subject property to reach a price in excess of $1.1 million. This assessment was reinforced on

the day of the auction when numerous large developers appear on-site and registered to bid on the subject property.

38. The subject property reached an auction price of only $610,000, a number below the reserve. As a result, the auction was unsuccessful, and TSA remained the record owner of the subject property.

39. Following the conclusion of the auction, which was videotaped, Plaintiff Beth Rose polled the registered bidders and inquired if the actions of the Village had negatively influenced their willingness to bid on the subject property. The vast majority, if not all, of those polled indicated that the Village's actions did prevent them from bidding on the subject property.

40. On September 16, 2021, the Village sent a Notice of Intent to Acquire to Plaintiff TSA. This Notice stated that the Village was going to take the subject property for a municipal water supply only. No appraisal was provided for the proposed appropriation and no Resolution authorizing the appropriation was provided. A copy of the Notice of Intent to Acquire is filed herewith and incorporated herein by reference, at Exhibit 6.

41. On October 20, 2021, the Village, for the first time, voted to authorize the expenditure of funds for an appraisal of the subject property. *See* Oct. 20, 2021, Meeting Minutes, filed herewith and incorporated herein by reference as Exhibit 7.

42. Over the next 10 months, Plaintiff property owners received no information or communication from the Village regarding the status of the proposed appropriation. During this period, Plaintiff property owners made multiple requests for any appraisal that had been prepared. They also requested information regarding the Village's studies regarding the necessity and feasibility of the proposed taking. These requests were not responded to.

9

43. On September 21, 2022, the Village, for the first time, passed a Resolution authorizing the appropriation of the subject property. This resolution was mailed to Plaintiff TSA along with a copy of an Appraisal report prepared on behalf of the Village. A copy of the <u>Sept. 22, 2022, Appropriation Notice</u> is filed herewith and incorporated herein by reference as Exhibit 8.

44. This Resolution was passed more than a year after the September 18, 2021, auction. Moreover, the appraisal report provided by the Village was nearly a year old.

45. To date, the Village has made no efforts whatsoever to even begin the process of obtaining approval to utilize the subject property as a source of potable water. Specifically, the Village:

   a. has performed no feasibility studies;

   b. has made no environmental impact assessment;

   c. has not even commenced the permitting and/or approval process with the Ohio EPA, the Ohio Water Development Authority, or the Wood County Health Department; and

   d. has no formal plan whatsoever for the development of the subject property following appropriation.

46. Even more problematic is the fact that the Village is already within the Northwest Water and Sewer District. Indeed, upon information and belief, the Village already contracts with the District regarding portions of its sanitary waste system. Water service is readily available via participation in the existing Water and Sewer District system, with a water tower located right outside village limits---and roughly 3000 feet from the subject property.

47.	Upon information and belief, the Village has previously refused to obtain water service through the Northwest Water and Serwer District as it would require that the Village give up control over the setting of water rates within the Village and the Village would lose the revenue associated therewith.

48.	The Village has rendered the Plaintiff landowners' property completely unmarketable since August 2021. Such status is continuing in nature as Plaintiffs cannot sell the property with the Village's actions serving as a cloud upon the title.

49.	On November 8, 2022, Plaintiff TSA transferred a portion of the subject property to Plaintiff Steven and Timothy, jointly. A copy of the November 8, 2022, Deed, is filed herewith and incorporated herein by reference as Exhibit 9.

## FIRST CAUSE OF ACTION

50.	Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as set forth fully at length herein.

51.	Defendants through their actions taken under color of law did consciously and intentionally interfere with the contractual and business relationship of the Plaintiffs.

52.	Specifically, the Defendant engaged in conspiracy and concerted pattern of conduct to impair the livelihood of plaintiffs, to prevent the sale of the property, and to artificially lower the fair market value of the property to coerce Plaintiff TSA and Timothy and Steven Snyder to sell the subject property to the Village for pennies on the dollar.

53.	The actions and inactions undertaken by Defendant Village shock the conscience and represent an impermissible disregard for the fundamental constitutional rights and liberties of the Plaintiffs.

54. Defendant's actions were and are undertaken under color of law and Defendant has used its power to violate the Constitutional rights of the Plaintiffs, specifically Defendant has violated Plaintiffs' rights as enshrined in the Fifth and Fourteenth Amendments, including but not limited to their just compensation for the taking of their property and to equal protection, and due process under the law. Therefore, Defendants are liable to Plaintiff pursuant to 42 U.S.C. §1983.

55. As a direct and proximate result of Defendant's taking, Plaintiffs have suffered damages, in an amount to be proven at trial, in excess of $75,000.00.

## SECOND AND THIRD CAUSES OF ACTION
**Preliminary and Permanent Injunction**

56. Plaintiffs hereby incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

57. Plaintiffs have been, and continue to be, adversely affected by the Defendant's abuse of its eminent domain power and trampling of their constitutional property and due process rights. Given the ongoing nature of this misconduct, and the utter lack of any necessity for the proposed taking, the Defendant's conduct creates harms to the Plaintiff property owners for which no adequate legal remedy exists.

58. Plaintiffs are entitled to an Order from this Court preliminarily and permanently enjoining the Defendant from engaging in any further efforts to appropriate the subject property as well as to prevent any future infringement upon Plaintiffs' full enjoyment of their legal property rights.

59. Plaintiff property owners are further entitled to an award of their fees and costs expended in the prosecution of this action.

**WHEREFORE**, the Plaintiffs respectfully pray for judgment against Defendant as follows:

A. For a judgment in their favor in an amount in excess of $75,000;

B. For preliminary and permanent injunctions.

C. For such other and further relief as this Honorable Court deems equitable, proper, and just.

Dated: December 20, 2022

Respectfully submitted,

**BARKAN & ROBON LTD.**

By: /s/ Zachary J. Murry
Zachary J. Murry (0087421)
*Attorney for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Respectfully submitted,

**BARKAN & ROBON, LTD.**

By: /s/ Zachary J. Murry
Zachary J. Murry (0087421)
*Attorney for Plaintiffs*

## **VERIFICATION**

STATE OF OHIO )
                               ) ss:
COUNTY OF LUCAS )

      The undersigned Plaintiffs, Steve Snyder, Tim Snyder, and T & S Agriventures, LLC, being first duly sworn according to law, deposes and states that they have read the foregoing Verified Complaint and agrees that the facts stated therein are true as they verily believes.

      Dated this __16__ day of December, 2022.

                                                 _____
                                                 Steven Snyder, individually and as member of
                                                 T & S Agriventures, LLC

                                                 _____
                                                 Timothy Snyder, individually and as member of
                                                 T & S Agriventures, LLC

Sworn to before me and subscribed in my presence this __16th__ day of December, 2022.

                                                 _____
                                                         Notary Public

