8(2IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **STEVE SNYDER, et al.,** | CASE NO. 3:22 CV 2282 |
| Plaintiffs, | |
| v. | JUDGE JAMES R. KNEPP II |
| **VILLAGE OF LUCKEY, OHIO,** | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

### INTRODUCTION

Currently pending before the Court is Defendant, the Village of Luckey, Ohio's Motion to Dismiss Plaintiffs Steve Snyder, Timothy Snyder, T&S Agriventures, LLC, and Beth Rose Real Estate and Auctions, LLC's First Amended Complaint. (Doc. 9). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendant's motion.

### BACKGROUND

Plaintiffs Steven and Timothy Snyder (brothers) are the sole members of Plaintiff T&S Agriventures, LLC ("TSA"). TSA was formed in 2005 for the purposes of purchasing the property at issue in this case, a former quarry which by the time of the 2005 purchase "had been inactive for many years", "was blighted", and where the quarry pit "had completely filled with water, creating a lake of [approximately] 30 acres with a depth of approximately 80 feet throughout." *Id.* at ¶¶ 10, 14. The Amended Complaint asserts on information and belief that prior to TSA's purchase, the former owners of the property offered it to the Village for $1.00 but the Village declined. *Id.* at ¶ 11. A 1979 agreement between the Village and the former owners authorized the Village to conduct studies and other activity associated with establishing the

property as a municipal water source; the Village never took such action. *Id.* at ¶¶ 12-13; *see also* Ex. 1, Doc. 8-1 (1979 Agreement between Village and France Stone Company).

TSA purchased the property – consisting of 16 parcels of real property (the subject property and two unrelated parcels) – for $330,000. (Doc. 8, at ¶ 14); *see also* Ex. 2, Doc. 8-2 (Recorded Deeds). Following their purchase, and for the next fifteen years, Plaintiffs improved the property in multiple ways, including: adding clean fill to improve topography and grading, obtaining and maintaining curb cuts, establishing electric and sewer service, landscaping, stocking and maintaining the lake, and "innumerable aesthetic improvements". (Doc. 8, at ¶ 15). These improvements were intended to make the property marketable for "high-end residential, or other, development." *Id.* at ¶ 16.

In 2018, as TSA prepared to market the property, it approached the Village to determine if the Village was interested in purchasing the property; the Village declined. *Id.* at ¶¶ 17-18.

In July 2021, Plaintiffs TSA, Timothy, and Steven, entered into an agreement with Plaintiff Beth Rose Real Estate and Auctions, LLC to sell the property at auction on September 18, 2021. *Id.* at ¶¶ 19-20. Beth Rose "undertook significant time, effort, and expense" in scheduling and marketing the auction, and was to receive a commission on the sale. *Id.* at ¶¶ 19-20. A pre-auction reserve was established and the property was to be auctioned in six tracts; the entirety of the subject property "was also to be offered as a whole, with the highest overall price as the winning bid." *Id.* at ¶ 22.

By August 4, 2021, the Village became aware of the anticipated auction; it contacted Plaintiffs and attempted to dissuade them from auctioning the property, requesting they not do so "because it would increase the fair market value of the property and make it more expensive for appropriation by the Village at a later date." *Id.* at ¶¶ 25-27.

2

At an August 17, 2021, regular Village Council meeting, a motion was passed to "begin the eminent domain process on [Plaintiffs'] properties for public purpose." *Id.* at ¶ 28; *see also* Ex. 4, Doc. 8-4, at 3 (Village Council Minutes). "Neither the minutes nor the motion provided any information on what the 'public purpose' allegedly was"; it "did not indicate that the appropriation was being undertaken for the taking of Plaintiffs' property and water rights for a public waterworks." (Doc. 8, at ¶ 28).

The following day, the Village Solicitor, Carey Speweik, sent TSA a "Notice of Inspection". *Id.* at ¶ 29; *see also* Ex. 5, Doc. 8-5 (Notice). It notified TSA of the Council's action "to begin the process of exploring the acquisition of the real property you own . . . for public use(s) pursuant to RC §163 *et seq.*" (Doc. 8-5, at 1). It further stated Village representatives would enter the property on August 23, 2021 to examine it "as . . . necessary or proper for the purpose of determining whether or not the subject property is suitable for use by the Village." *Id.* Plaintiffs assert this letter "did not include a copy of the minutes from the council meeting referenced therein, nor did it contain a copy of any written resolution authorizing the use of the Village's eminent domain power pursuant to [Ohio Revised Code §] 163.01, *et seq.*" (Doc. 8, at ¶ 30).

Steven, on behalf of TSA, responded to the Village in an August 20, 2021 letter; although that letter refused access, TSA later agreed to provide access for an inspection. *Id.* at ¶ 30-31; *see also* Ex. 6, Doc. 8-6, at 1 (Letter from Steven Snyder to Speweik).

Also on August 20, 2021, the Village issued a Notice of Intent to Acquire identifying the purpose of appropriation as for a "public water supply and/or park." (Doc. 8, at ¶ 32); (Doc. 8-7) (Notice). The Complaint asserts the Village's actions did not comply with Ohio Revised Code § 743.01, which states that any land taken for water-works purposes "shall not be used for any

3

other purpose, except by authority of the director of public service and with consent of such legislative authority." *Id.* at ¶¶ 33-34.

On September 16, 2021, the Village sent a Second Notice of Intent to Acquire. *Id.* at ¶ 56; (Doc. 8-11). This Notice stated the Village intended to acquire the property "for a public water supply" and indicated it would be presenting TSA with a written offer based on its determination of the fair market value of the property. (Doc. 8-11, at 1).

Before the scheduled September 18, 2021, auction, Plaintiffs assert the Village "took affirmative and concerted actions to limit the marketability of the property and to sabotage the auction", including demanding Beth Rose make all potential bidders aware of the Village's intent to appropriate the property. (Doc. 8, at ¶¶ 36-37). Plaintiffs assert the Village placed "No Parking" and other signage around the perimeter of the property on the day of the auction, and Village representatives attended the auction "with the intended effect of chilling bidding activity on the property". *Id.* at ¶¶ 49-51. Based on their pre-market research, Plaintiffs "expected the subject property to reach a price in excess of $1.1 million", but it reached a price of "only $610,000, a number below the reserve." *Id.* at ¶¶ 53-54.

Plaintiffs further state the Village, through its agents, made numerous statements indicating that the Village did not have a necessity or plan for the property and the Village's actions were taken to reduce the market value of the property for a future appropriation. *Id.* at ¶¶ 38-47.

On October 20, 2021, the Village voted to authorize funds for an appraisal of the property. *Id.* at ¶ 60; Doc. 8-13 (Council Meeting Minutes). Over the next ten months, Plaintiffs "received no information or communication from the Village regarding the status of the proposed appropriation." (Doc. 8, at ¶ 61).

On September 21, 2022, the Village passed a Resolution authorizing the appropriation of the property; it mailed the Resolution with a "good faith offer" of $525,000 for the property. (Doc. 8-14).

Plaintiffs assert that to date, the Village "has made no efforts whatsoever to even begin the process of obtaining approval to utilize the subject property as a source of potable water" and that the Village's actions have "rendered the Plaintiff landowners' property completely unmarketable since August 2021." (Doc. 8, at ¶¶ 64, 67).

In November 2022, TSA transferred a portion of the property to Plaintiffs Steven and Timothy. *Id.* at ¶ 68; Doc. 8-15 (deed).

Plaintiffs contend Defendant undertook its actions "not for a legitimate public necessity or government purpose, but . . . instead . . . in an effort to buttress the Village's standing in a future negotiation with Northwest Water and Sewer District." (Doc. 8, at ¶ 74); *see also id.* at ¶¶ 65-66 ("the Village already contracts with the District regarding portions of its sanitary waste system. Water service is readily available via participating in the existing Water and Sewer District system . . . the Village has previously refused to obtain water service through the Northwest Water and Se[]wer District as it would require that the Village give up control over the setting of water rates within the Village and the Village would lose the revenue associated therewith.").

Plaintiffs filed this suit on December 20, 2022 (Doc. 1); they subsequently filed an Amended Complaint on April 10, 2023 (Doc. 8). The Amended Complaint asserts a single cause of action under 42 U.S.C. § 1983. *Id*. at 14-16. It further asserts a "second and third cause[] of action" for preliminary and permanent injunctive relief. *Id.* at 16.

In the interim between the filing of Plaintiffs' original complaint and amended complaint, on March 17, 2023, Defendant filed a Petition to Appropriate Real Property and Fix Compensation in the Wood County Court of Common Pleas against Plaintiffs TSA, Steven Snyder, and Timothy Snyder (among others). *See Village of Luckey v. T&S Agriventures, LLC, et al.*, No. 2023 CV 0144 (Wood Cnty. Ct. Common Pleas). That matter remains pending.[1]

## STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may take the form of either a facial or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Facial attacks challenge the sufficiency of the pleading itself. *Id.* Factual attacks, on the other hand, challenge the factual existence of subject-matter jurisdiction, regardless of what is or might be alleged in the pleadings. *Id.* In a facial attack, the Court must accept all material allegations of the complaint as true and must construe the facts in favor of the nonmoving party. *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)); *see also Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001) (holding that all reasonable inferences must be drawn in favor of the plaintiff when evaluating a facial attack on subject-matter jurisdiction). In contrast, a factual attack contests the validity of the facts alleged as support for subject-matter jurisdiction. *Ritchie*, 15 F.3d at 598. With a factual challenge, no presumption of truthfulness arises for either party, and the Court must weigh the evidence to determine its power to hear the case. *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). In this analysis, the court may consider both the pleadings and evidence not contained in the pleadings. *Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).

---

1. This Court may take judicial notice of the proceedings in state court. *See Lyons v. Stovall*, 188 F.3d 327, 333 n.3 (6th Cir. 1999) (holding that federal courts may take judicial notice of proceedings in other courts of record). The Wood County court held a necessity hearing in September 2023, and post-hearing briefs were filed in November 2023.

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. The Court construes the complaint in the light most favorable to Plaintiffs, accepts all factual allegations as true, and determines whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

Defendant moves to dismiss Plaintiffs' Amended Complaint. It argues (1) Plaintiffs' injunctive relief claims are moot; (2) Beth Rose lacks standing; and (3) Plaintiffs fail to state a constitutional claim under § 1983. Plaintiffs dispute the latter two points but agree their injunctive relief claims should be dismissed (although the parties dispute whether such dismissal should be with or without prejudice). For the reasons discussed below, the Court dismisses Plaintiffs' injunctive relief claims without prejudice, and otherwise grants Defendants' Motion to Dismiss.

<u>Injunctive Relief</u>

Defendant argues Plaintiffs' second and third causes of action seeking injunctive relief should be dismissed as moot because appropriation proceedings are underway. It further contends that Plaintiffs' attempt to seek injunctive relief in this matter is improper. In response, Plaintiffs note that in light of the pending state court appropriation proceedings, they "believe the

7

interests of judicial efficiency are best served by the without-prejudice dismissal of their claims for injunctive relief" and do not oppose dismissal of their second and third causes of action without prejudice. (Doc. 11, at 13). The Village replies that a "with prejudice" dismissal is appropriate because the Village raised this issue in its original Motion to Dismiss and Plaintiffs failed to address it in their amended pleading. On the facts presented, the Court finds dismissal of Plaintiffs second and third causes of action without prejudice is appropriate.

Beth Rose Real Estate LLC's Standing

Defendant moves to dismiss the claims of Beth Rose Real Estate for lack of standing. (Doc. 9, at 6). In doing so, it contends (1) the Amended Complaint does not plead an injury in fact traceable to the Village, and (2) a favorable decision on Plaintiffs' constitutional claims would not redress any injury to Beth Rose. Plaintiffs respond that "Beth Rose had a contingent interest in all of the proceeds from the auction sale of the property", which was "denied and taken by the misconduct of the Defendant in interfering with the auction.." (Doc. 11, at 13). The Court agrees that Beth Rose's claims must be dismissed.

A plaintiff must have standing under Article III of the Constitution, which "limits the judicial power to resolving actual 'Cases' and 'Controversies.'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020). The standing test has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff's injury in fact must be both "(a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

Here, Beth Rose's asserted injury in fact is her contractual right to – and contingent

8

interest in – a portion of the proceeds from the sale of the property. She cites *Wilson v. Trustees Union Twp.*, 1998 WL 744089, at *5 (Ohio Ct. App.) for the proposition that a contingent interest in property is sufficient to give a party standing on a claim of an unconstitutional taking. (Doc. 11, at 15). Plaintiffs further assert such a claim is redressable in the form of a jury award of monetary damages. *Id.*

The Court finds, however, that unlike *Wilson*, according to the factual allegations of the Amended Complaint, Beth Rose's property interest was speculative and not certain. The Amended Complaint alleges Beth Rose was entitled to a percentage of the sale if the property sold, but the property did not sell. As such, Beth Rose lacks standing and its claims must be dismissed.

<u>1983 Claims</u>

Defendant contends Plaintiffs' § 1983 cause of action should be dismissed for failure to state a claim. In the alternative, Defendant contends this Court should abstain from deciding Plaintiffs' federal claims in light of the pending state court eminent domain proceeding. In opposition, Plaintiffs assert they have adequately stated federal claims. They do not address Defendant's alternative argument regarding abstention.

For the reasons set forth below, the Court finds abstention inappropriate, but agrees that Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted and must be dismissed.

### *Younger* Abstention

The Court begins with Defendant's contention that the Court should abstain from deciding Plaintiffs' federal claims.

Under *Younger v. Harris,* a federal court should abstain when a state court proceeding "(1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll v. City of Mount Clemens,* 139 F.3d 1072, 1074 (6th Cir. 1998) (citations omitted). *Younger* abstention applies to actions for declaratory and injunctive relief, *id.,* as well as damages actions. *Nimer v. Litchfield Twp. Bd. of Trs.*, 707 F.3d 699, 701 (6th Cir. 2013).

"*Younger* abstention derives from a desire to prevent federal courts from interfering with the functions of state criminal prosecutions and to preserve equity and comity." *Doe v. University of Kentucky*, 860 F.3d 365, 368 (6th Cir. 2017) (citing *Younger*, 401 U.S. at 44). While *Younger* abstention may apply to cases outside of the criminal context, "such applications are narrow and exist only in a few exceptional circumstances." *Doe*, 860 F.3d at 369 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). The Sixth Circuit has identified three categories of cases where *Younger* abstention may be appropriate:

> [F]irst, *Younger* permits abstention when there is an ongoing state criminal prosecution. Next, *Younger* precludes federal involvement in certain civil enforcement proceedings. These are proceedings that are akin to criminal prosecutions. Finally, *Younger* pertains to civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions, such as contempt orders.

*Doe*, 860 F.3d at 369 (internal quotations and citations omitted). Defendant does not identify how this case fits into any of these three categories. As such, the Court finds *Younger* abstention not appropriate here. *See, e.g.*, *Rettig v. Henry Cnty. Bd. of Comm'rs*, 2020 WL 2839421, at *1-2 (N.D. Ohio) (declining to apply *Younger* abstention to an eminent domain-related proceeding).

**Takings Claim**

Defendant argues Plaintiffs fail to state a takings claim because (1) Plaintiffs have not identified a property interest taken from them and (2) even under the facts alleged in the

10

Amended Complaint, the proposed appropriation is for public use – a public water supply. Plaintiffs respond that they have identified such a property interest and the facts alleged demonstrate any public purpose was merely pretext for unconstitutional motives. For the reasons set forth below, the Court finds Plaintiffs have not identified a property interest.

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Fourteenth Amendment made the Takings Clause applicable to the States. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). The Takings Clause "requires the payment of compensation whenever the government acquires private property for a public purpose." *Tahoe–Sierra Preservation Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002). In conditioning the exercise of the Government's power on just compensation, the Takings Clause bars it "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

The federal "Constitution protects rather than creates property interests," which means that "the existence of a property interest," for purposes of whether one was taken, "is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998) (quotation marks omitted). To have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a "legitimate claim of entitlement to it". *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

11

Here, Defendant is correct that Plaintiffs have not alleged a traditional takings claim related to their property. Pursuant to the allegations of the Amended Complaint itself, the physical property has not changed hands, and Defendant has not refused to pay for the acquisition of the property. *See Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023) ("With respect to takings claims, '[a] property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it.'") (quoting *Knick v. Twp. of Scott, Pennsylvania*, ––– U.S. –––, 139 S. Ct. 2162, 2167 (2019)). As such, Defendant argues Plaintiffs have not identified a property interest which has been "taken" from them.

> In opposition, Plaintiffs assert that:
>
> Faced with the auction sale of the property, the Defendant undertook intentional actions that were designed to depress the alienability and market value of the subject property. These actions, which included the erection of physical barriers to the entry of the subject property prior to the auction and the issuance of a facially deficient Notice of Intent to Acquire—without legislative authority—were successful in preventing the sale of the property and in acting to deprive the Plaintiffs of all economic value associated with their property from August 20, 2021, th[r]ough—at least—the filing of the Defendant's State Court Petition. This conclusion is further evidenced by the fact that, by statute, the Defendant did not have the ability to perform a 'quick take' appropriation as permitted by R.C. 163.06(B) and was precluded from taking possession of the property until the filing of its Petition and the depositing of the statutory offer with the Clerk of Court.
>
> Defendant could not take the property through legal means, so it instead relied on unconstitutional ones in order to prevent the marketing and sale of the property for nearly two (2) years. Such conduct clearly constitutes "a substantial or unreasonable interference with a property right [including] actual physical taking of real property, or . . . deprivation of an intangible interest in the premises. *Smalley v. Ohio Dep't of Transp., Dist. 1*, 2007-Ohio-1932, ¶ 9 . . . (Ohio Misc.2d 2007) (quoting *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206 . . .

(Doc. 11, at 20-21). In conclusion, Plaintiffs argue that "Defendant's conduct in advance of the September 2021 auction constitutes an illegal and uncompensated appropriation of Plaintiffs'

12

property rights." *Id.* at 21. Elsewhere, Plaintiffs refer to this as a "*de facto* taking." *Id.* at 7. As now so characterized by Plaintiffs, then, it appears they assert the "property interest" taken is the alleged decrease in value of the property and hampering of their ability to sell the property prior to the institution of appropriation proceedings. Otherwise stated, the property interest identified appears to be in selling the property for an amount Plaintiffs believe it was worth. But Plaintiffs have not cited anything to support that the so-characterized "interest" is a protected property interest.

Moreover, in contrast to Plaintiffs' characterization that Defendant's action "deprive[d] the Plaintiffs of all economic value associated with their property" (Doc. 11, at 20), the Amended Complaint itself states that the property reached a price of $610,000 at the September 2021 auction. (Doc. 8, at ¶ 54). Although Plaintiffs assert this is less than the property was worth and less than the reserve they had set for the auction, it directly contradicts an assertion that Plaintiffs were deprived of *all* economic value. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (a regulatory taking may occur when a government regulation deprives a property owner of "all economically beneficial or productive use of land.").

The Supreme Court has stated that "[m]ere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are 'incidents of ownership. They cannot be considered as a "taking" in the constitutional sense'". *Agins v. City of Tiburon,* 447 U.S. 255 263, n.9 (1980), overruled on other grounds in *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528 (2005) (quoting *Danforth v. United States,* 308 U.S. 271, 285 (1939)); *see also id.* ("Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings

13

ended.").² And although Plaintiffs certainly allege a delay here, courts have found similar or longer delays are not "extraordinary." *See LXR RS V, LLC v. Mun. of Norristown*, 2019 WL 4930157, at *4 (E.D. Pa.) (collecting cases).³

---

2. Albeit in a decades old case, an Ohio appellate court has also explained:

> Finally, even if we consider all of the City's actions which have been objected to by Hallmore together, we do not conclude that there basis for Hallmore's claim of a de facto appropriation of its property. In *City of Buffalo v. J. W. Clement Co.* (1971), 28 N.Y.2d 241, 321 N.Y.S.2d 345, 269 N.E.2d 895, a case which served as one of the bases for the Sixth Circuit's decision in *Sayre v. City of Cleveland* (6th Cir.1974), 493 F.2d 64, which is cited below, the court observed:
>
>> "The facts herein fail to disclose any act upon the part of the condemning authority which could possibly be construed as an assertion of dominion and control. Indeed, it cannot be said that the city, by its actions, either directly or indirectly deprived Clement of its possession, enjoyment or use of the subject property. We simply have a manifestation of an intent to condemn and such, even considering the protracted delay attending final appropriation, cannot cast the municipality in liability upon the theory of a 'taking' for there was no appropriation of the property in the accepted legal sense . . . ." *City of Buffalo*, *supra*, at 357.

*The Hallmore Corp. v. City of Cleveland*, 1977 WL 201368, at *5 (Ohio Ct. App.).

3. The *LXR RS V* Court explained, in addressing a permit delay:

> Notably, several courts have held that much longer delays are not extraordinary. *See, e.g., Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985) (no temporary taking despite eight year delay); *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 306 [122 S.Ct. 1465, 152 L.Ed.2d 517] (2002) (thirty-two month delay not extraordinary); *Wyatt v. United States*, 271 F.3d 1090 (Fed. Cir. 2001) (same for seven year delay); *Dufau v. United States*, 22 Cl. Ct. 156, 163 (Cl. Ct. 1990) (permit delay of sixteen months did not constitute temporary taking); *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1351 (Fed. Cir. 2004) (eighteen-month delay was "far short of extraordinary").

2019 WL 4930157, at *4; *see also Nance v. City of Albemarle*, 520 F. Supp. 3d 758, 800 (M.D.N.C. 2021) ("The delay of roughly 22 months is far shorter than the periods of delay that other courts found were not extraordinary").

14

Plaintiffs' opposition brief cites the importance of private property rights in the history of this country, but they have not meaningfully responded to Defendant's argument that Plaintiffs have not identified a cognizable property interest taken by Defendant's actions and it is not this Court's duty to attempt to construct one for them. In sum, the Court finds Plaintiffs have not identified a property interest *independent of* their interest in the subject property itself, which they appear to acknowledge will be compensated through the state appropriation procedure.[4] That is, they have not identified a property interest of which they have been deprived. As such, the Court grants Defendant's motion to dismiss the takings claim.

**Equal Protection**

Defendant also asserts Plaintiffs do not adequately plead a § 1983 equal protection claim. The Court agrees.

In the Amended Complaint, under the § 1983 cause of action, Plaintiffs assert conclusorily that:

> Defendant's actions were and are undertaken under color of law and Defendant has used its power to violate the Constitutional rights of the Plaintiffs, specifically Defendant has violated Plaintiffs' rights as enshrined in the Fifth and Fourteenth Amendments, including by not limited to their just compensation for the taking of their property *and to equal protection*, and due process under the law. Therefore Defendants are liable to Plaintiff[s] pursuant to 42 U.S.C. § 1983.

(Doc. 8, at ¶ 76).

The Equal Protection Clause of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1."The Fourteenth Amendment's guarantee of the 'equal protection of the laws' bars governmental discrimination that either (1) burdens a fundamental right, (2) targets a suspect

---

4. Because Plaintiffs have not identified a property interest upon which to base their takings claim, the Court need not reach the parties' arguments regarding public purpose/pretext.

class, or (3) intentionally treats one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023) (citing *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005)). The clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).

A "class of one" equal protection claim is a claim that the government has "intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference." *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527 (6th Cir. 2023); *see Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). "In a class-of-one claim, a 'plaintiff alleges that [they] ha[ve] been intentionally treated differently from others similarly situated,' and that either 'the government actors had no rational basis for the difference' or the 'challenged government action was motivated by animus or ill-will.'" *Bartlett v. Washington*, 793 F. App'x 403, 407 (6th Cir. 2019) (citations omitted) (first quoting *Olech*, 528 U.S. at 564; then quoting *Paterek v. Village of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). These claims most often involve allegations of arbitrary legislative or regulatory classifications. *See Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 602 (2008).

Plaintiffs contend they adequately alleged action by the Village that (1) "Plaintiffs were singled out *and treated differently than every other property owner* located within the geographic confines of the Defendant Village in that the Defendant actively and intentionally interfered with Plaintiffs ability to sell the property and monetize their respective interests therein" and that this action (2) burdens its fundamental right to own and control property. (Doc. 11, at 19) (emphasis added).

The Court agrees with the Village that this allegation of differential treatment is not included in the Amended Complaint. In fact, there are no factual allegations in the Amended Complaint asserting anything about the Village's treatment of other property owners. *Cf. Stanislaw v. Thetford Twp.*, 515 F. App'x 501, 507 (6th Cir. 2013) ("[P]laintiffs attempt to state a class-of-one claim, asserting that while Angus 'routinely approved every other request for licensure by every other business that sought it from him in Thetford Township,' he denied the Stanislaws' application. Plaintiffs' *Olech* claim is woefully incomplete, as they fail to identify any similarly situated businesses who were actually treated differently. Judgment on this claim was appropriate as well."). As such, the Court grants Defendant's Motion to Dismiss Plaintiffs' equal protection claim.

**Substantive Due Process**

Defendants also move to dismiss any alleged substantive due process claim. They point out that such a claim is noted in the introduction of Plaintiffs' Amended Complaint, but not mentioned as a specific cause of action. *See* Doc. 1, at ¶ 1 ("Particularly, Plaintiff states that the governmental activity of the Defendant . . . has constituted shocking and continuing violations of the Plaintiffs rights under the Fifth Amendment to the United States Constitution as well as their rights of procedural and substantive due process under the Fourteenth Amendment."). Later in the Complaint, under their § 1983 cause of action, Plaintiffs assert Defendant's actions "shock the conscience and represent an impermissible disregard for the fundamental constitutional rights and liberties of the Plaintiffs" and "Defendant has violated Plaintiffs' rights as enshrined in the Fifth and Fourteenth Amendments, including but not limited to . . . due process under the law". *Id.* at ¶¶ 75-76. Plaintiffs respond that dismissal is inappropriate. They emphasize that their

property interests are fundamental and that securing leverage for future contract negotiations is not a compelling state interest.

First, to the extent Plaintiffs' substantive due process claim duplicates their Takings Clause claim, "the Supreme Court has held that the concept of substantive due process has no place when another provision of the Constitution directly addresses the type of illegal governmental conduct alleged by the plaintiff." *McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826, 834 (N.D. Ohio 2009) (citing *Albright v. Oliver,* 510 U.S. 266, 273 (1994)); *see also Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) ("The first problem with using the substantive due process clause to do the work of the Takings Clause is that we have held it cannot be done."); *Buckles v. Columbus Mun. Airport Auth.*, 90 F. App'x 927, 931 (6th Cir. 2004) ("Buckles's substantive due process claim fails because, where the Constitution specifically provides a remedy, as for the taking of real estate, a substantive due process claim that merely restates the more specific claim will not lie.").

Second, even if the claim is an independent one, Defendant again points out that Plaintiffs have not identified a property interest upon which to base their substantive due process claim. (Doc. 9, at 10); (Doc. 12, at 5). Again, the only property interest Plaintiffs identify in opposition is its amorphous interest in a certain property value. As such – even if such a claim can be read to be plead in the Amended Complaint, the Court agrees that Plaintiff has not identified a property interest upon which to base the claim. *See EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012) ("Because EJS had no protectable interest, its substantive due-process claim must fail."); *see also id*. ("Our prior precedent makes clear that in the context of a discretionary zoning decision, government action will not shock the conscience unless the arbitrary and capricious action touches on a protectable interest."); *McCarthy v.*

*Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006) ("[D]ue process and takings claims require that the plaintiffs first demonstrate that they have a legally cognizable property interest."). As such, Plaintiffs' substantive due process claim must also be dismissed.

## Conclusion

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Dismiss (Doc. 9) be, and the same hereby is, GRANTED. The Amended Complaint's First Cause of Action is dismissed with prejudice; the Second and Third Causes of Action are dismissed without prejudice.

    s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE